

| Signed/Docketed |
| January 9, 2013 |

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| In re | ) | |
| | ) | Case No. 11-17876 MER |
| TAMMY LEA TOXVARD | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |

## ORDER

THIS MATTER is before the Court on the following:

1.  *Second Amended Chapter 13 Plan* (the "Plan") filed by debtor Tammy Lea Toxvard (the "Debtor") on January 9, 2012;[1]

2.  *Objection to Confirmation of the Amended Plan* (the "Objection") filed by the assigned Chapter 13 trustee Sally Zeman (the "Trustee") on February 8, 2012;[2]

3.  *Debtor's Support Brief: Summary of Debtor's Position and Relevant Case Law* filed by the Debtor on July 9, 2012;[3]

4.  *Brief in Support of The Trustee's Objection to Motion to Confirm Chapter 13 Plan* filed by the Trustee on July 9, 2012;[4]

5.  *Debtor's Response to Trustee's Support Brief* filed by the Debtor on July 25, 2012;[5]

6.  *Response Brief in Support of The Trustee's Objection to Motion to Confirm Chapter 13 Plan* filed by the Trustee on July 26, 2012;[6]

---

[1] Docket No. 47.

[2] Docket No. 51.

[3] Docket No. 70.

[4] Docket No. 69.

[5] Docket No. 77.

[6] Docket No. 77.

7.    *Brief Amicus Curiae by Douglas B. Kiel in Support of Objection to Motion to Confirm Chapter 13 Plan* filed by unassigned Chapter 13 trustee Douglas B. Kiel ("Kiel") on July 9, 2012;[7] and

8.    *Debtor's Response to Brief Amicus Curiae by Douglas B. Kiel in Support of Objection to Motion to Confirm Chapter 13 Plan* filed by the Debtor on October 1, 2012.[8]

The Court has considered the evidence and legal arguments presented by the parties, including the parties' supplemental briefs and the brief *amicus curiae* submitted by Kiel, and hereby makes the following findings of fact and conclusions of law.[9]

## BACKGROUND FACTS

The Court heard testimony from the Debtor and her non-filing spouse, Ludvig E. Toxvard, II ("Mr. Toxvard"), at the evidentiary hearing held June 25, 2012.  At the outset of this opinion, the Court finds both witnesses were credible.  The Court believes these witnesses testified truthfully and have asserted genuine issues of dispute in good faith, attempting to obtain a fair and just outcome.  The background facts set forth herein are gleaned from testimony and evidence presented at the hearing, the stipulated facts submitted by the parties, and the record in the Debtor's bankruptcy case.

## A.    Debtor's First Marriage

The Debtor was previously married to Matthew Weese, and together they have three children.[10]  The Debtor owns certain real property known as 445 Aspen Circle, Frederick, CO 80530 (the "Frederick Property"), and the Frederick Property is titled in the Debtor's name only.  The Debtor's Schedule A states the value of the Frederick Property is $190,500 and Schedule D lists two liens in the

---

[7]  Docket No. 83.

[8]  Docket No. 84.

[9]  At the evidentiary confirmation hearing held June 25, 2012, the parties stipulated to the admission of Trustee's Exhibits A through M, Debtor's Exhibits 1 through 11, page 5 of Debtor's Exhibit 12, and Debtor's Exhibits 13 through 21.  The Court admitted those exhibits and the parties' Stipulated Facts (Docket No. 64) into evidence.

[10]  The Debtor testified her three children are adults, and do not live with her.

aggregate amount of $190,797 encumbering the Frederick Property.[11]  There is no equity in the Frederick Property.[12]

The Debtor's first marriage deteriorated due to financial disagreements, and the Debtor and Mr. Weese later divorced.  The Debtor testified the Frederick Property is vacant, and given the lack of any equity, the property will be surrendered to the lienholders through the foreclosure process.

Prior to the Debtor's filing for bankruptcy protection, Mr. Weese and his counsel initiated an action to collect attorney's fees related to the divorce.  The Debtor testified she was not represented in the dissolution proceeding, and the resulting issues involving custody, domestic support obligations and the Frederick Property were the cause of her bankruptcy filing.

## B.    Debtor's Second Marriage

On July 7, 2007, the Debtor married her second husband, Mr. Toxvard. Like the Debtor, Mr. Toxvard was also previously married and divorced.  Mr. Toxvard has two children from his previous marriage.  As a result of the financial difficulties and disputes during their previous marriages, the Debtor and Mr. Toxvard agreed to keep their income and expenses separate during their marriage to avoid fighting over money. The Debtor and Mr. Toxvard maintain separate checking and savings accounts, and file separate tax returns.[13]

Prior to their marriage, Mr. Toxvard was the sole owner of certain real property known as 9423 N. 89th Street Longmont, Colorado 80503 (the "Longmont Property").  Mr. Toxvard has maintained sole ownership of the Longmont Property and bears sole responsibility for the mortgage obligations against the Longmont Property.  Although the Debtor resides at the Longmont Property, the Longmont Property is not property of the Debtor's bankruptcy

---

[11]  Docket No. 1.

[12]  Even if there was equity in the Frederick Property, the Debtor testified as a condition of the divorce, Mr. Weese would be entitled to a percentage of proceeds if the Frederick Property was sold.

[13]  The Debtor and Mr. Toxvard testified they both hold powers of attorney for the Debtor's mother.  As attorneys-in-fact for the Debtor's mother, the Debtor and Mr. Toxvard have joint access to a single account with First Bank.  This account is used only as needed to address the mother's needs.  No funds in this account are used to pay expenses of the Debtor.

estate because the Debtor has no legal or equitable ownership interest in the Longmont Property.[14]

## C.    Debtor's Bankruptcy Filing

On April 11, 2011 ("Petition Date"), the Debtor filed for relief under Chapter 13 of the Bankruptcy Code.  The Debtor filed her petition as a married individual filing alone.  The Debtor and Mr. Toxvard reside in the Longmont Property, and their respective children are not dependents.  The parties agree the Debtor's household consists of only two individuals.

The Debtor submitted her Form B22C with her initial bankruptcy filing, which calculates the Debtor's current monthly income for purposes of determining the plan commitment period and the Debtor's disposable income.[15] The Debtor asserts she completed Form B22C in conformance with her financial arrangement with Mr. Toxvard.  The Debtor reports average monthly gross income of $3,500.02 for herself and $6,220.27 for Mr. Toxvard.  The Debtor and Mr. Toxvard earn a combined average monthly gross income of $9,720.29, which, when annualized, equals $116,643.48 – above the median family income in Colorado for a two person household.

The Debtor claimed the Line 19 marital adjustment deduction on her Form B22C in calculating her disposable income (the "Marital Adjustment Deduction").  The Marital Adjustment Deduction reduced the combined average monthly gross income to $5,321.26.  When annualized, the adjusted disposable income equals $63,855.12 – an amount just below the same Colorado median income threshold.  This Marital Adjustment Deduction is at the center of the dispute between the Debtor and the Trustee.

The Debtor also filed her Schedules I and J on the Petition Date, which calculate the Debtor's average monthly income and monthly expenses.[16]  The Debtor did not disclose Mr. Toxvard's income on her Schedule I, but states "Debtor and spouse keep all income and expenses separate except debtor buys all food, and they file separate taxes."[17]  The Debtor lists her average gross monthly income as $2,916.68 and her average monthly expenses as $2,214.00.

---

[14]  § 541(a).

[15]  *See* Docket No. 1.

[16]  *See* Docket No. 1.

[17]  Schedule I, line 17, Docket No 1.

**D.     Second Amended Plan and Trustee's Objection**

On January 9, 2012, the Debtor filed her Plan, providing a payout to Class 4 creditors of $5,654 over 60 months, in the following tiered payments: $1,180.00 total for months 1 through 10, and $185.00 per month for months 11 through 60.  The aggregate general unsecured claims are $19,710.83, resulting in a 28.7% recovery for Class 4.  Counsel for the Trustee represented as of June 25, 2012, the Debtor was current on monthly payments under the Plan.

On February 8, 2012 the Trustee filed her Objection, asserting two objections to confirmation of the Plan.  First, the Trustee alleges the Debtor's Marital Adjustment Deduction is overstated to reduce the Debtor's household income to below the median.  The Trustee argues the Debtor's household income is actually above the median, and she should calculate her disposable income under 11 U.S.C. § 1325(b)(3)[18] rather than § 1325(b)(2).  Thus, the Trustee asserts she cannot determine if the Debtor is committing all of her disposable income to the Plan based on the Debtor's calculation of disposable income under § 1325(b)(2).  Second, the Trustee objects to confirmation because the Debtor did not include Mr. Toxvard's income on Schedule I, and a complete Schedule I is necessary to calculate disposable income under § 1325(b)(2).

## DISCUSSION

With respect to confirmation of a Chapter 13 plan, "[t]he controlling section of the Bankruptcy Code is § 1325."[19]  The instant dispute centers on the Debtor's Line 19 Marital Adjustment Deduction, and her calculation of disposable income under § 1325(b)(2).  Based on the facts of this case, the issue before the Court is whether the Debtor's calculation of disposable income, which includes the Marital Adjustment Deduction, complies with § 1325(b)(1)(B).  If so, the Debtor's Plan may be confirmed over the Trustee's Objection.  Interpretation of the Line 19 marital adjustment is an issue of first impression for this Court.

The Court notes the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") amended § 1325(b) to establish requirements for Chapter 13 plan payments, where the plan does not provide for full payment of unsecured claims and an objection to confirmation is filed by a trustee or a holder of an unsecured claim.  In this circumstance, § 1325(b)(1)(B) requires payment of all the debtor's projected disposable

---

[18]   Unless otherwise stated, all statutory references shall be to Title 11 of the United States Code.

[19]   *In re Arrigo*, 399 B.R. 700, 702 (Bankr. D. Colo. 2008).

income for the applicable commitment period to unsecured creditors.[20]   BAPCPA amended § 1325(b)(2) and added § 1325(b)(3), which together provide a new definition of "disposable income."  Specifically, these amendments link "disposable income" as defined in § 1325(b)(2) to "current monthly income" as defined in § 101(10A).[21]

## A.   Current Monthly Income

Section 101(10A)(A) defines "currently monthly income" as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive), without regard to whether such income is taxable income," which the debtor receives in the six months preceding the petition date.[22]

Section 101(10A)(B) further provides:

(B) Current monthly income includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses **of the debtor** or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent) . . . [.][23]

A plain reading of § 101(10A)(B) indicates current monthly income must include amounts regularly paid by any entity, including a non-filing spouse, for household expenses of the debtor.[24]  A plain reading of the statute also reveals a clear distinction between the household expenses **of the debtor** in an individual filing and the household expenses **of the debtor and the debtor's spouse** in a joint filing.  In an individual bankruptcy filing, current monthly income includes a non-filing spouse's regular payments toward "the household expenses **of the debtor**," whereas in a joint filing, current monthly income

---

[20]   *See* § 1325(b)(1)(B).

[21]   *See* § 1325(b)(2), which applies to a below-median debtor.  For an above-median debtor, § 1325(b)(3) added by BAPCPA, requires determination of the expenditure component by reference to the "means test" standards of § 707(b)(2)(A) and (B).

[22]   § 101(10A)(A).

[23]   § 101(10A)(B) (emphasis added).

[24]    *Sturm v. United States Trustee,* 455 B.R. 130, 136 (N.D. Ohio 2011); *In re Shahan*, 367 B.R. 732, 736-37 (Bankr. D. Kan. 2007).

includes the regular contributions from any entity toward the "household expenses . . . of the debtor **and the debtor's spouse**."[25]

## B.   Projected Disposable Income

Under § 1325(b)(1)(B), the Court may not approve the Debtor's Plan over the Trustee's Objection unless "the plan provides that all of the debtor's **projected disposable income** to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan."[26]  In other words, the Court may confirm the Plan if the Debtor devotes all of her projected disposable income to her Plan for the applicable commitment period.  This determination turns on the calculation and definition of the term "projected disposable income."

For below-median income debtors, § 1325(b)(2) defines "disposable income" as the "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended . . . ."[27]  For debtors with monthly income greater than the highest median family income for families of the same size, § 1325(b)(3)(B) provides the "amounts reasonably necessary to be expended under [§ 1325(b)(2)] shall be determined in accordance with [§ 707(b)(2)(A) and (B)] . . . ."[28]  The Court notes § 1325(b)(3) does not expressly require the inclusion of a spouse's current monthly income in the calculation for disposable income.

Courts have disagreed on the meaning of "projected" in the term "projected disposable income" as used in § 1325(b).  In *In re Lanning*, the Tenth Circuit found the "forward-looking" interpretation to be more compatible with § 1325(b)(1)(B) and Form 22C, and *Lanning* controls this Court's decision in the instant case.  As noted by the Tenth Circuit:

> [U]nder the forward-looking approach, "projected" links "disposable income" and "to be received in the applicable commitment period," requiring the debtor to commit all "disposable income" (as defined by § 1325(b)(2) and its reliance on the definition of "current monthly income") that is "projected . . . to be received in the applicable commitment period."  Under this reading, the debtor's actual

---

[25]   § 101(10A)(B).  This distinction recognizes married couples do not always commingle their income into a pool and pay for household expenses from the pool.  *See Clemons*, 2009 WL 1733867, at *3.

[26]   § 1325(b)(1)(B) (emphasis added).

[27]   § 1325(b)(2).

[28]   § 1325(b)(3).

circumstances at the time of plan confirmation are taken into account in order to "project" (in other words, to "forecast") how much income the debtor will actually receive during the commitment period, which, after deducting permitted expenses, then "will be applied to make payments" to the unsecured creditors, as the statute requires.[29]

The Tenth Circuit limited this holding as follows:

[A]s to the income side of the § 1325(b)(1)(B) inquiry, the starting point for calculating a Chapter 13 debtor's "projected disposable income" is presumed to be the debtor's "current monthly income," as defined in 11 U.S.C. § 101(10A)(A)(i), subject to a showing of a substantial change in circumstances.[30]

Under the *Lanning* interpretation, "the calculation on Form 22C is just the starting point for the analysis of projected disposable income. . . . The Court may still consider Schedules I and J, as well as changes in a debtor's post-petition income and expenses."[31]

Notably, Schedules I and J and Form B22C employ different analytical approaches to a non-filing spouse's income and expenditures.[32]  As a carryover from pre-BAPCPA practice, Schedules I and J require the inclusion of all of the spouse's income on Schedule I and provide for deduction of all of the spouse's expenditures on Schedule J.  Likewise, Form B22C provides for the initial inclusion of all the spouse's income as current monthly income.  However, Form B22C also contains a marital adjustment deduction, which allows married debtors filing individually to deduct the portion of their non-filing spouse's income that is not encompassed within § 101(10A)(B).  This means the marital adjustment excludes the portion of the non-filing spouse's income not regularly paid for the household expenses of the debtor.

---

[29]  *In re Lanning*, 545 F.3d 1269, 1279 (10th Cir. 2008); *see also Arrigo*, 399 B.R. at 704-05 (discussing *In re Lanning*).

[30]  *Id.* at 1282.

[31]  *Id.* at 704.

[32]  Form B22C reduces the debtor's "current monthly income" by removing certain line items of the non-filing spouse's income, rather than deducting the same amount for expenditures as Schedule J does.  This analytical distinction is critical because current monthly income determines whether the debtor is below-median requiring the calculation of disposable income under § 1325(b)(2) or above-median requiring the calculation of disposable income with the means test standards under § 1325(b)(3).

**C.      Form B22C Marital Adjustment Deductions**

Chapter 13 debtors report their "current monthly income" on Form B22C. When a married debtor files a Chapter 13 without their spouse, the debtor may apply Form B22C marital adjustment deductions to calculations involving both the commitment period and disposable income.  The Line 13 deduction addresses whether a non-filing spouse's income is combined with the debtor's to determine if a debtor is above-median for the purpose of determining the plan commitment period under § 1325(b)(4).  Line 19 relates to the calculation of disposable income under § 1325(b)(2).  Here, the Debtor did not take a marital adjustment deduction on Line 13, and the commitment period of the Debtor's Plan is five years.

With respect to the calculation of disposable income, Part III of Form B22C provides the following marital adjustment on Line 19:

> If you are married, but are not filing jointly with your spouse, enter on Line 19 the total of [your non-filing spouse's income] that was NOT paid on a regular basis for the household expenses of the debtor or the debtor's dependents.  Specify in the line below the basis for excluding [your non-filing spouse's income] (such as payment of the spouse's tax liability or the spouse's support of persons other than the debtor or the debtor's dependents) and the amount of income devoted to each purpose.  If necessary, list additional adjustments on a separate page.  If the conditions for entering this adjustment do not apply, enter zero.[33]

In other words, the Line 19 marital adjustment deduction removes a non-filing spouse's income for purposes of determining the applicability of the "means test" standards for expenditures under § 1325(b)(3), to the extent the income is not regularly contributed to the payment of household expenses of the debtor.

As discussed above, § 101(10A)(B) makes clear amounts paid by a non-filing spouse are included under the umbrella of a debtor's "current monthly income."  However, the Line 19 marital adjustment deduction allows a debtor to exclude a non-filing spouse's income in the calculation of the disposable income of an above-median debtor with a non-filing spouse.  Therefore, a portion of Mr. Toxvard's income must be included in Part III of Form B22C only if that portion of his income constitutes the Debtor's current monthly income within the scope of § 101(10A)(B) - the amount he "regularly contributes for the household expenses of the debtor or the debtor's dependents."

---

[33]  Form B22C at Line 19.

**D.**     **The Debtor's Marital Adjustment Deduction**

"The burden of proof to obtain confirmation is on the proponent of the plan."[34]  Here, the burden of proof for confirmation of the Plan rests with the Debtor.  At issue is the Debtor's Marital Adjustment Deduction on Line 19 of Form B22C and her calculation of projected disposable income over the life of the Plan.[35]  The Marital Adjustment Deduction removed the portion of Mr. Toxvard's income which the Debtor contends does not constitute a regular contribution to household expenses for the purpose of calculating her disposable income.

The starting point for the Debtor's calculation of projected disposable income is her stated current monthly income on Line 11 of Form B22C in the total amount of $9,720.29, which includes Mr. Toxvard's income.[36]  The Court finds the Debtor has reported an accurate figure on Part I of Form B22C by including all gross amounts earned by her and Mr. Toxvard.

The next step in the analysis is whether the Debtor properly calculated her projected disposable income.  In Part III of Form B22C, the Debtor claimed

---

[34]   *In re Arrigo*, 399 B.R. 700, 702 (Bankr. D. Colo. 2008) (quoting *In re Lincoln*, 30 B.R. 905, 909 (Bankr. D. Colo. 1983)); *see also In re Anderson*, 173 B.R. 226, 229 (Bankr. D. Colo. 1993).

[35]   The Court acknowledges the extensive body of case law addressing the Line 19 marital adjustment deduction.  *See, e.g., Sturm v. U.S. Trustee*, 455 B.R. 130 (N.D. Ohio 2011) (allowing marital adjustment for entirety of non-filing spouse's mortgage payment); *In re Rable*, 445 B.R. 826 (Bankr. N.D. Ohio 2011) (denying marital adjustment for non-filing spouse's mortgage payment on home where debtor resided); *In re Malewicz*, 457 B.R. 1, 6 (Bankr. E.D.N.Y. 2010) (non-debtor spouse's interest in a joint tax refund was not property of the estate and provisions of the confirmed plan could not bind him to turn over his separate property to the trustee); *In re Vollen*, 426 B.R. 359 (Bankr. D. Kan. 2010) (denying marital adjustment for non-filing spouse's mortgage payment on home acquired by debtor and spouse during their marriage); *In re Trimarchi*, 421 B.R. 914 (Bankr. N.D. Ill. 2010) (denying marital adjustment for non-filing spouse's mortgage payment); *In re Clemons*, 2009 WL 1733867 (Bankr. C.D. Ill. 2009) (allowing marital adjustment for entirety of non-filing spouse's mortgage payment); *In re Sharp*, 394 B.R. 207 (Bankr. C.D. Ill. 2008) (debtor did not claim marital adjustment); *In re Barnes*, 378 B.R. 774 (Bankr. D.S.C. 2007) (denying marital adjustment of non-filing spouse's future bonus); *In re Charles*, 375 B.R. 338 (Bankr. E.D. Tex. 2007) (non-filing spouse not required to contribute funds after car payments made in full); *In re Shahan*, 367 B.R. 732 (Bankr. D. Kan. 2007) (allowing marital adjustment for non-filing spouse's mortgage payment and vehicle payment); *In re Quarterman*, 342 B.R. 647 (Bankr. M.D. Fla. 2006); *In re Baldino*, 369 B.R. 858, 862 (Bankr. M.D. Pa. 2007) ("Congress chose to exclude that portion of the non-filing spouse's income devoted to personal pursuits or expenses from current monthly income.").

[36]   Debtor's Exhibit 4, p. 2.

the Marital Adjustment Deduction, which reduces the current monthly income available to fund the Plan.  The Debtor listed the following line items:

| Monthly Expense | Amount Per Month |
|---|---|
| Mr. Toxvard's paycheck deductions | $2,871.03[37] |
| Mr. Toxvard's hot air balloon taxes and recreation expenses | $100.00 |
| Mr. Toxvard's second mortgage | $320.00 |
| Mr. Toxvard's contributions to his children | $833.00 |
| Mr. Toxvard's credit card payments | $175.00 |
| Mr. Toxvard's insurance for his vehicles | $100.00 |
| **TOTAL AMOUNT OF MARITAL ADJUSTMENT DEDUCTION** | **$4,399.03** |

The Debtor subtracted the total Marital Adjustment Deduction from Mr. Toxvard's gross monthly income listed on Line 2, Column B of From B22C.  The difference between his gross income and these expenses leaves a regular monthly contribution of $1,821.24 toward the household expenses of the Debtor.  In addition, the Marital Adjustment Deduction reduced the combined gross monthly income of the Debtor and Mr. Toxvard from $9,720.29 to $5,321.26, which results in an annualized combined income of $63,855.12.  This adjusted amount falls just below the $64,679 median two person household income in Colorado.  But for the Trustee's Objection, the analysis would end here and the Debtor's calculation of disposable income under § 1325(b)(2) would stand.

However, the Trustee argues the Debtor improperly deducted the second mortgage against the Longmont Property and the amount retained in Mr. Toxvard's paycheck in her Marital Adjustment Deduction, and omitted other

---

[37]   In Debtor's Draft Amended Schedules and Amended Form B22C, Exhibit 8, p. 5 and 8, the Debtor explains the line item for "Mr. Toxvard's paycheck deductions" includes $1,991.05 in actual paycheck deductions and $879.98 retained by Mr. Toxvard after paycheck deductions for his personal use.  Although the Amended B22C is not before the Court, the testimony at the evidentiary hearing supports this explanation.

household expenses of the Debtor in her calculation.[38]  The Trustee asserts the following expenses are "household expenses" of the Debtor regularly paid by Mr. Toxvard, which should be included in her current monthly income calculation:

| Expense | Amount Per Month |
|---|---|
| First mortgage against Longmont Property | $1,400.00 |
| Second mortgage against Longmont Property | $320.00 |
| Home maintenance for Longmont Property | $100.00 |
| Electric bill | $100.00 |
| Gas bill | $150.00 |
| Water/sewer bill | $100.00 |
| Cable/satellite TV | $93.00 |
| 2007 Jeep Wrangler | $550.00 |
| Medical/vision/dental insurance for Mr. Toxvard and Debtor | $292.50[39] |
| Mr. Toxvard's 401(k) loan | $101.79 |
| Hay for Debtor's horse | $100.00 |
| Amount retained by Mr. Toxvard from his paycheck | $879.98[40] |
| **TOTAL:** | **$4,187.27** |

---

[38]  Under § 101(10A)(B), "amount[s] paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor" are included as current monthly income of a debtor.

[39]  Trustee's Brief in Support of Objection, p. 5 (Docket No. 69).

[40]  Trustee's Brief in Support of Objection, p. 6 (Docket No. 69).  While "retained by non-filing spouse" is not an expense, *per se*, the Trustee argues the Court should presume these funds are used to pay the household expenses of the Debtor because the Debtors did not present any evidence to the contrary.

Assuming the Trustee is correct and these expenses cannot be deducted under the Line 19 marital adjustment, the above total $4,187.27 would be included as the Debtor's current monthly income.  In this scenario, the Debtor's currently monthly income would be $9,508.53, which, when annualized, would equal $114,102.36 and qualify the Debtor as above-median for determination of disposable income.[41]  Under the Trustee's calculation, the Debtor's current monthly income is above-median, and her disposable income must be determined under the means test standards of § 1325(b)(3), rather than the § 1325(b)(2) standards.

With the exceptions of the second mortgage and the amount retained by Mr. Toxvard from his paycheck, the Trustee does not dispute the other line items deducted by the Marital Adjustment Deduction.  The Court also notes the Debtor did not actually deduct any other expense stated by the Trustee. In effect, this means the Debtor was contributing those amounts in her calculation of projected disposable income to fund the Plan.  However, the Trustee argues the Debtor must include each of the above expenses in her calculation of current monthly income.  Based on this argument, the Court will consider whether § 101(10A)(B) requires the Debtor to include these expenses in calculation or whether the Debtor may deduct these expenses through the marital adjustment on Form B22C.  In so doing, the Court will also determine whether the Debtor has overstated her Marital Adjustment Deduction, as alleged by the Trustee.

**E.     Household Expenses**

It is undisputed each expense at issue is paid by Mr. Toxvard on a regular basis.  Therefore, the Trustee's argument turns on whether the above enumerated expenses are indeed household expenses of the Debtor.  With respect to the following analysis, the Court stresses the definition of "current monthly income" under § 101(10A)(B) clearly states the household expenses must be "of the debtor."[42]

"Our interpretation of the Bankruptcy Code starts where all such inquiries must begin: with the language of the statute itself."[43]  "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition

---

[41]   The Court arrives at $9,508.53 by taking the Line 11 total combined gross income for the Debtor and Mr. Toxvard ($9,720.29), subtracting the claimed Marital Adjustment Deduction ($4,399.03), and adding the expenses the Trustee alleges are paid regularly by Mr. Toxvard for the household expenses of the Debtor ($4,187.27) back into the equation.

[42]   § 101(10A)(B).

[43]   *Ransom v. FIA Card Servs., N.A.*, — U.S. —, 131 S.Ct. 716, 723, 178 L.Ed.2d 603 (2011) (internal quotations omitted).

required by the text is not absurd—is to enforce it according to its terms."[44] When a word is not defined, the Court should apply its ordinary meaning.[45]  The term "household expenses" is not defined by the Bankruptcy Code.  However, a household is ordinarily defined as "[a] family living together. . . . A group of people who dwell under the same roof."[46]  An expense is defined as "[a]n expenditure of money[.]"[47]

Here, the Debtor and Mr. Toxvard are a family of two living together at the Longmont Property.  Based on the ordinary meaning of "household expenses," the Court finds each of the expenses listed by the Trustee are indeed household expenses, with the exception of the $879.98 amount retained by Mr. Toxvard from his paycheck for his personal use.[48]  The amount retained by Mr. Toxvard is not an expenditure of money, but a retention of his own income.  The Court recognizes situations where a Chapter 13 plan is filed in bad faith, and the amount retained from a non-filing spouse's paycheck may be an issue.  However, on the facts of this case, and based on the credibility of the Debtor and Mr. Toxvard, the Court finds no issue with Mr. Toxvard's retention of income.

The next issue is whether the remaining household expenses are expenses "of the debtor," and if so, to what extent must the Debtor include such expenses as projected disposable income.  The Court's "determination of the amount paid by a non-filing spouse on a regular basis for household expenses of the debtor is necessarily fact-specific and subject to interpretation."[49]

---

[44]  *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004).

[45]  *Smith v. U.S.*, 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138, (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning."); *see also Perrin v. U.S.*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.").

[46]  BLACK'S LAW DICTIONARY 808 (9th ed. 2009).

[47]  BLACK'S LAW DICTIONARY 658 (9th ed. 2009).

[48]  *See In re Clemons*, 2009 WL 1733867, at *4 ("Though the Bankruptcy Code does not define the term 'household expenses,' mortgage related expenses and rent payments are unquestionably encompassed within the term, along with food, clothing, utilities, car payments, and insurance.").

[49]  *In re Sale*, 397 B.R. 281, 287 (Bankr. M.D.N.C. 2007) (quoting *In re Travis*, 353 B.R. 520, 526 (Bankr. E.D. Mich. 2006)).

To resolve these issues, the Court will consider whether each household expense is either the Debtor's sole expense, Mr. Toxvard's sole expense, or a joint expense. If a household expense is the Debtor's sole expense, then the Debtor must include Mr. Toxvard's entire payment of such expense in her calculation of disposable income. If a household expense is Mr. Toxvard's sole expense, then the Debtor may deduct the entire expense from her calculation. If a household expense is a joint obligation, then the Debtor must include Mr. Toxvard's payment of such expense in her calculation, but only to the extent Mr. Toxvard's payment satisfies the Debtor's share of the obligation. Absent evidence to the contrary, this amount shall be fifty percent of the total expense.[50] The Court finds that such an apportionment best satisfies the plain meaning of the statutory definition of current monthly income whereby the Debtor's income must be increased by the amount Mr. Toxvard regularly contributes for the household expenses of the Debtor.[51]

### 1.   *Longmont Property Mortgage Payments ($1720 per month)*

Mr. Toxvard is the sole owner of the Longmont Property and the only individual obligated on the two liens against the Longmont Property. Mr. Toxvard pays $1,400 per month toward the first mortgage and $320 per month toward the second mortgage. The Trustee argues these mortgage payments are household expenses of the Debtor and must be included in the Debtor's calculation of current monthly income. The Debtor argues, while these payments provide her with the benefit of shelter, these payments do not go toward her expenses because she is not the owner of the Longmont Property, and is not liable on either mortgage.

The Court recognizes there are two conflicting lines of cases when a debtor's non-filing spouse is the only one liable on the mortgage. The first line of cases, cited by the Trustee, has adopted a payment "for the benefit of" the debtor approach. Courts applying this household-centric approach hold the mortgage payments must be included in a debtor's current monthly income because the payments benefit the debtor.[52] The second line of cases, cited by the Debtor, adopt a debtor-centric approach and hold such mortgage payments may be excluded from a debtor's current monthly income because the debtor does not possess an ownership interest in the home and is not liable on the

---

[50]   *See In re Boatright*, 414 B.R. 526, 534 (Bankr. W.D. Mo. 2009).

[51]   *See id.*

[52]   *See In re Paliev*, 2012 WL 3564031 (Bankr. E.D. Va. Aug. 17, 2012); *In re Rable*, 445 B.R. 826 (Bankr. N.D. Ohio 2011); *Sturm*, 455 B.R. 130; *In re Trimarchi*, 421 B.R. 914 (Bankr. N.D. Ill. 2010); *In re Vollen*, 426 B.R. 359, 373 (Bankr. D. Kan. 2010).

mortgages which encumber the home.[53]   The Court is persuaded by the latter approach.

This Court agrees with the Chief Judge Nugent's reasoning in *In re Shahan*.  In *Shahan*, the U.S. Bankruptcy Court for the District of Kansas allowed a married debtor to take a marital adjustment for the mortgage and car payments the debtor's non-filing spouse made toward the couple's home and car, which the non-filing spouse acquired prior to the marriage and solely owned and remained liable for during the marriage.[54]   In reaching its conclusion, the court noted, while both the home and the car were "undoubtedly a part of [the debtor's] household," they nevertheless were not expenses of the debtor.[55]   The facts in *Shahan* are identical to the facts regarding the mortgages in the case at bar.

The cases the Trustee cites are unpersuasive.  In particular, the Trustee relies on another decision from Chief Judge Nugent, *In re Vollen*, in which the court reached the opposite result of *Shahan*.  The *Vollen* Court held mortgage payments made by a non-filing spouse toward a home owned solely by the non-filing spouse must be excluded from a debtor's marital adjustment.[56]   The court explained its conflicting holdings in *Shahan* and *Vollen* by noting the following:

> The Court reached the conclusion it did in *Shahan* because of the non-debtor's exclusive legal ownership of the real estate acquired *prior to the marriage*.  Here, the Vollens acquired an initial interest in the real estate *during their marriage* and it is their family home.  The Court continues to believe that its allowance of a marital adjustment… was proper in *Shahan* on its facts.  At the same time, the Court believes the factual distinction between *Shahan* and the case at bar warrants a different result here, where the property was acquired (and even owned briefly by the debtor) during the marital relationship… [.][57]

The same fact which distinguishes *Vollen* from *Shahan* also distinguishes *Vollen* from the case at bar.  Here, the Debtor did not at any time own the Longmont Property.  In fact, Mr. Toxvard owned the Longmont Property prior to

---

[53]   *See Shahan* 367 B.R. 732;  *In re Clemons*, 2009 WL 1733867;  *In re Borders*, 2008 WL 1925190 (Bankr. S.D. Ala. 2008).

[54]   *See Shahan*, 367 B.R. 732.

[55]   *Id*. at 738 (internal quotations omitted).

[56]   Trustee's Response Brief in Support of Objection, p. 4 (Docket No. 78).

[57]   *In re Vollen*, 426 B.R. 359, 373 (Bankr.D.Kan. 2010) (emphasis added).

his marriage to the Debtor.  The Longmont Property was never marital property. Thus, the *Vollen* holding is inapplicable to the instant matter.

The Trustee also relies on a decision from the U.S. Bankruptcy Court for the Northern District of Ohio, *In re Rable*.[58]  In *Rable*, the court held, although the debtor does not own the marital home and is not obligated on the mortgage, "the costs incurred by the debtor's spouse to service the first and second mortgages on the property are, by their very nature, paid by the non-debtor on a regular basis for the household expenses of the debtor[.]"[59]  In reaching this holding, the court relied, in substantial part, on its recent decision, *In re Sturm* – a case in which, similar to the case at bar, a debtor claimed a marital adjustment for mortgage payments made by her non-filing spouse on a home he solely owned and for which he was solely liable.[60]

*Sturm*'s holding which denied the debtor's marital adjustment was subsequently reversed on appeal by the U.S. District Court for the Northern District of Ohio.[61]  The District Court explained the bankruptcy court erred by stating the plain language of the definition of current monthly income did not support its decision to deny the debtor's marital adjustment.[62]  Further, the District Court determined the bankruptcy court's interpretation of the definition of current monthly income reduced the statutory language distinguishing individual cases from joint cases into mere "surplusage."[63]

As a policy matter, the Trustee argues, "the better approach is to not include the mortgage payments in the marital deduction and allow the Debtor to make an adjustment to the IRS standard for mortgage/rent expense for the actual amount of the mortgage payments."[64]  However, the Trustee fails reconcile her recommendation with the *In re Ransom* decision.  In *Ransom*, the United States Supreme Court held a debtor "may not deduct loan or lease expenses when he does not have any."[65]

---

[58]  Trustee's Response Brief in Support of Objection, p. 4, (Docket No. 78).

[59]  *In re Rable*, 445 B.R. 826, 829 (Bankr. N.D. Ohio 2011).

[60]  *Id.* at 829.

[61]  *See In re Sturm*, 455 B.R. at 141.

[62]  *Id.* at 138.

[63]  *Id.* at 135.

[64]  Trustee's Response Brief in Support of Objection, p. 5 (Docket No. 78).

[65]  *In re Ransom v. FIA Card Servs., N.A.*, 131 S.Ct. 716, 730, 178 L.Ed.2d. 603 (2011); *see also In re Sturm*, 2012 WL 4344605, at *12 (Bankr. N.D. Ohio 2012) (denying

The *Ransom* holding squarely applies to the facts before the Court because the Debtor does not own the Longmont Property or make payments against the two mortgages. Thus, how, in light of *Ransom*, would the Debtor be permitted to take the IRS standard deduction for a home mortgage? In addition, a home mortgage deduction would violate Form B22C's instruction that a debtor's future payment for secured debt may only be deducted "[f]or each of **your** debts that is secured by an interest in property that **you own**."[66]

In light of *Ransom*'s holding, the Court fails to see the "double dipping" issue portended by Kiel in his Brief Amicus Curiae, whereby a debtor who takes a marital adjustment for the home mortgage expense could also take a deduction for the home mortgage expense.[67] Rather, if the Court were to deny the Debtor a marital adjustment for the first and second mortgage payments made by Mr. Toxvard, then *Ransom*'s holding would compel the Court to deny the Debtor a deduction for mortgage payments she is not obligated to pay for real property she does not own and never owned. An outcome where the Debtor may declare her non-filing spouse's mortgage payment as her income, but is unable to deduct the mortgage payment would be an absurd result. To paraphrase Form B22C, the mortgage payments are not payments toward the Debtor's debts secured by an interest in property that she owns.[68] Such a practice would artificially inflate the Debtor's current monthly income by the amount of the non-filing spouse's mortgage expense.[69]

The Court finds Mr. Toxvard solely owns the Longmont Property, and at all times prior to their marriage was the sole owner of the Longmont Property. At no time did the Debtor hold legal title to the Longmont Property. The Court further finds Mr. Toxvard is solely liable for the mortgage obligations against the Longmont Property in the aggregate monthly amount of $1720.

Accordingly, the Court concludes Mr. Toxvard's payments on the first and second mortgages in connection with the Longmont Property are not household expenses of the Debtor. To find these expenses as household expenses of the Debtor would fail to give meaning to each word of the statute or turn portions of the statute into mere redundancy. Therefore, the Court concludes the Debtor

---

the debtor a deduction on Form B22C for a mortgage payment she does not make on a home which is solely owned by her non-debtor spouse).

[66] Form B22C at Line 47 (emphasis added); *see also Sturm*, 455 B.R. at 137.

[67] Brief Amicus Curiae by Douglas B. Kiel in Support of Trustee's Objection, p. 6 (Docket No. 83).

[68] Form B22C at Line 47.

[69] *See Clemons*, 2009 WL 1733867, at *4.

may include the full amount of $1720 paid by Mr. Toxvard in the Line 19 marital adjustment on Form B22C.

### 2.      Home Maintenance ($100 per month)

Because the Longmont Property is not the Debtor's obligation, it stands to reason the monthly maintenance expenses for the Longmont Property are, similarly, not the Debtor's obligation.  These home maintenance expenses are paid entirely by Mr. Toxvard to maintain his property.  For this reason, the Court determines the monthly home maintenance expenses in the amount of $100 are not household expenses of the Debtor for purposes of calculating the Debtor's current monthly income.  Therefore, the Debtor may include this amount in her marital adjustment on Line 19.

### 3.      401(k) Loan Repayment ($101.79 per month)

According to Mr. Toxvard's testimony, he used proceeds from his 401(k) loan to make home improvements on the Longmont Property, including replacing windows and installing hardwood floors and slate tiles.[70]  Without invoking the protections which are usually afforded to a spouse's contributions to or repayment of retirement funds, the Court finds these loan proceeds were used to improve the Longmont Property.  Because Mr. Toxvard is the sole owner of the Longmont Property, the Court finds his 401(k) loan repayment expenses are not household expenses of the Debtor.  Therefore, the Debtor may deduct Mr. Toxvard's 401(k) loan repayment expense in her marital adjustment on Line 19 of Form B22C.

### 4.      Household Utilities (Electric, Gas, Water, Sewer, Television) ($443 per month)

Mr. Toxvard owned the Longmont Property prior to his marriage to the Debtor, and at all relevant times was the only person obligated on the mortgages.  However, Mr. Toxvard did not bring all of the current utility expenses with him into the marriage.  Unlike a mortgage, which does not increase based on the size of a household, utility expenses increase when the number of occupants increase.  Therefore, the Court finds a portion of the aggregate monthly expenses for household utilities in the amount of $443 paid by Mr. Toxvard are household expenses of the Debtor which must be included in the Debtor's current monthly income.[71]  Hearing no evidence to the contrary, the Court determines this amount to be fifty percent of the total monthly utility expense of $443 for this two person household, or $221.50 per month.  The

---

[70]   *See also* Trustee's Brief in Support of Objection, p. 6 (Docket No. 69).

[71]   *See In re Boatright*, 414 B.R. 526, 534 (Bankr. W.D. Mo. 2009).

Debtor may not deduct $221.50 per month for utilities through the marital adjustment on Form B22C.

   5.     *Jeep Wrangler ($550 per month)*

   The Debtor and Mr. Toxvard co-financed a 2007 Jeep Wrangler, for which Mr. Toxvard pays $550 per month.  While the car payment for the Jeep Wrangler is a joint obligation, Mr. Toxvard shoulders the entire financial burden.  The Debtor's joint ownership interest in the Jeep Wrangler qualifies the Jeep as a household expense of the Debtor, and therefore, the Debtor must include the amount Mr. Toxvard pays toward her obligation on the Jeep Wrangler in her own current monthly income.  Based on their equal ownership interest in the Jeep and joint obligation on the car loan for this vehicle, the Court determines the Debtor is responsible for fifty percent of the total monthly payment of $550, or $225.  The Debtor may not deduct this amount through the marital adjustment on Form B22C.

   6.     *Medical/Vision/Dental Insurance ($292.50 per month)*

   The Debtor and Mr. Toxvard share a comprehensive health insurance plan, which is offered by Mr. Toxvard's employer.  According to testimony at trial supported by Mr. Toxvard's paycheck stubs, $135 is deducted from his biweekly paycheck to cover the cost of this insurance.  On a monthly basis, Mr. Toxvard pays $292.50 for this insurance.[72]  At trial, the Debtor was unsure how much of the total insurance expense could be attributed to her coverage; however, the Debtor testified she tried to reimburse Mr. Toxvard whatever amounts she could spare each month for the cost of her coverage.

   This insurance coverage, in part, is undoubtedly a household expense of the Debtor, which Mr. Toxvard pays for *in toto*, notwithstanding the small percentage the Debtor testifies to paying.  Therefore, the Debtor must include the amount Mr. Toxvard pays toward her portion of the couple's shared health insurance policy in her calculation of current monthly income.  In this case, absent any evidence to the contrary, the Court determines this amount is fifty percent of the total monthly payment of $292.50, or $146.25.  The Debtor may not deduct this amount on Line 19 of Form B22C.

   7.     *Hay for Debtor's Horse ($100 per month)*

   The Debtor testified she solely owns a horse, and Mr. Toxvard pays for the horse's hay.  Because the horse is the Debtor's sole obligation, feeding the horse is also the Debtor's sole obligation.  The Court finds this household expense is entirely an expense of the Debtor, and the Debtor must include the

_____

   [72]  ($135 x 26 weeks) ÷ 12 months = $292.50.

$100 per month in her calculation of current monthly income.  The Debtor may not deduct this amount as a marital adjustment.

>    8.    *Amount Retained by Mr. Toxvard from his Paycheck ($879.98 per month)*

The Trustee asserts the $879.98 retained by Mr. Toxvard from his paycheck for personal use is used to pay the household expenses of the Debtor, and cannot be deducted under the marital adjustment.  The Trustee alleges the Debtor bears the burden as the Plan proponent to prove the amount retained by Mr. Toxvard is not spent on household expenses.  The Trustee did not present any evidence on this issue, but asserts this amount cannot be deducted in the martial adjustment because the Debtor failed to provide evidence to the contrary as the proponent of the Plan.  The Court disagrees.

Here, the Debtor included the gross amount of Mr. Toxvard's income in Part I of Form B22C, and deducted his paycheck deductions plus the $879.98 in her Marital Adjustment Deduction.  The Debtor testified the amount retained by Mr. Toxvard is used for his personal expenses, and not the household expenses of the Debtor.  Therefore, the burden shifted to the Trustee to show the "retained amount" is used to regularly pay the household expenses of the Debtor.[73]  The Trustee offered no evidence to rebut the Debtor's testimony.  Having admittedly failed to present any evidence on this issue,[74] the Trustee has not satisfied her burden the amounts "retained by non-filing spouse" may not be deducted through the Marital Adjustment Deduction.

Although the Court finds the amount retained by Mr. Toxvard from his paycheck for personal use is not a "household expense," and the Trustee failed to demonstrate the retained income is regularly used to pay household expenses of the Debtor, Mr. Toxvard is already contributing more to the Plan than the Debtor is required to include.  The Court tallied the household expenses as set forth above to determine whether the Debtor's projected disposable income calculation contains enough of Mr. Toxvard's income to cover such expenses.

| Household Expense | Total Amount Per Month | Liability for Expense | Portion of Expense Paid for the Debtor |
|---|---|---|---|
| First mortgage against Longmont Property | $1,400.00 | Mr. Toxvard | N/A |

---

[73]    *See In re Dugan*, 2008 WL 3558217, at *6 (Bankr. D. Kan. 2008).

[74]    Trustee's Brief in Support of Objection, p. 6 (Docket No. 69).

| Second mortgage against Longmont Property | $320.00 | Mr. Toxvard | N/A |
|---|---|---|---|
| Home maintenance for Longmont Property | $100.00 | Mr. Toxvard | N/A |
| Electric bill | $100.00 | Joint | $50.00 |
| Gas bill | $150.00 | Joint | $75.00 |
| Water/sewer bill | $100.00 | Joint | $50.00 |
| Cable/satellite TV | $93.00 | Joint | $46.50 |
| 2007 Jeep Wrangler | $550.00 | Joint | $225.00 |
| Medical/vision/dental insurance | $292.50 | Joint | $146.25 |
| Mr. Toxvard's 401(k) loan | $101.79 | Mr. Toxvard | N/A |
| Hay for Debtor's horse | $100.00 | Debtor | $100.00 |

In summary, the Court finds the Debtor is solely or jointly obligated to include $692.75 of the disputed expenses as household expenses of the Debtor paid on a regular basis by Mr. Toxvard.  This total is $1,128.49 less than the $1,821.24 amount of Mr. Toxvard's income the Debtor has proposed to include as current monthly income to fund the Plan (Mr. Toxvard's gross income of $6,220.27 minus the Marital Adjustment Deduction of $4,399.03).  Even assuming the Debtor is one hundred percent responsible for her joint obligations - the household utilities, the Jeep, and the health insurance - the Debtor would be obligated to include only $1,385.50 of Mr. Toxvard's income in her own current monthly income – an amount which is $434.74 less than the amount the Debtor has proposed to include.  Thus, the Debtor has included enough of Mr. Toxvard's income into her calculation of disposable income to render the Trustee's argument against amounts "retained by non-filing spouse" moot.

In conclusion, the Trustee objects to confirmation of the Debtor's proposed Plan, in part, because she alleges the Debtor's Marital Adjustment Deduction is overstated.  After analyzing the household expenses as proposed by the Trustee, the Court finds the Debtor's Marital Adjustment Deduction includes more than enough income from Mr. Toxvard to cover the household expenses of the Debtor regularly paid by Mr. Toxvard.  However, the Court denies confirmation of the Debtor's proposed Plan so the Debtor may file an amended Form B22C which accurately reflects the Courts findings regarding household expenses.

**F.      Debtor's Schedules I and J**

Under § 1325(b)(1)(B), the Court must determine whether the Debtor's Plan provides for all the Debtor's projected, or forward looking, disposable income will be applied to payments to unsecured creditors over the life of the Plan.  To this end, Schedules I and J are critical to the Court's determination of the Debtor's disposable income.  As the Tenth Circuit articulated, "the calculation on Form 22C is just the starting point for the analysis of projected disposable income. . . .  The Court may still consider Schedules I and J, as well as changes in a debtor's post-petition income and expenses."[75]

The Trustee's second objection to confirmation of the Debtor's proposed Plan is the Debtor failed to complete Schedule I to include Mr. Toxvard's income.  While the Debtor provided the Trustee with a proposed Amended Schedule I, no amended schedules were filed with the Court.  In her Schedule I filed with the Court, the Debtor left the column labeled "Spouse" blank.[76]

The instructions on Schedule I state "[t]he column labeled "Spouse" must be completed in all cases filed by joint debtors and by **every married debtor, whether or not a joint petition is filed** . . . [.]"[77]  A debtor must complete the "Spouse" column as directed by the instructions.  Disclosure of Mr. Toxvard's income is necessary, not only to show the Debtor is committing all of her disposable income to Plan payments, but also to show feasibility and good faith, two additional requirements of confirmation under §1325.[78]  Also, in the case of an overfunded plan, such as the one before the Court where the Debtor's proposed monthly payment is greater than her monthly disposable income, disclosure of Mr. Toxvard's income is necessary to show the source of income for the additional funding for feasibility purposes.[79]

Because the Debtor has failed to complete the "Spouse" column on Schedule I, the Court can not adequately determine the feasibility of the Debtor's proposed plan.  Therefore, the Court denies confirmation of the Plan, and the Debtor may file an accurate amended Schedule I.

---

[75]   *In re Arrigo*, 399 B.R. at 704 (discussing *In re Lanning*, 545 F.3d 1269 (10th Cir. 2008)).

[76]   Schedule I (Docket No. 1).

[77]   *Id.* (emphasis added).

[78]   § 1325(a)(3) and (6).

[79]   *In re Paliev*, 2012 WL 3564031 (Bankr. E.D. Va. 2012).

## CONCLUSION

Based on the foregoing,

IT IS THEREFORE ORDERED for the reasons set forth above, confirmation of the Debtor's Second Amended Chapter 13 Plan is DENIED.

IT IS FURTHER ORDERED the Debtor shall have thirty (30) days from the date of this Order to file an amended Chapter 13 plan, an amended B22C form, and an amended Schedule I consistent with this Order, failing which the Court may dismiss the Debtor's Chapter 13 case without further notice.

Dated January 9, 2013                          BY THE COURT:

                                               Michael E. Romero
                                               United States Bankruptcy Judge